Mark KOZY, Plaintiff–Appellant,

v.

**WINGS WEST AIRLINES, INC.; Jim Bishop; Chester Gault; Gene Erreca; Regional Airline Pilot Association, Defendants–Appellees.**

No. 95–15280.

United States Court of Appeals,<br>Ninth Circuit.

Argued and Submitted May 15, 1996.

Decided July 15, 1996.

Michael G. Dias, Hayward, California, for plaintiff-appellant.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for defendant-appellee.

Henry D. Lederman and Jeffrey L. Adams, Littler, Mendelson, Fastiff, Tichy & Mathiason, Walnut Creek, California, for defendant-appellee.

Before: PREGERSON and TROTT, Circuit Judges, and WINMILL, District Judge.*

WINMILL, District Judge:

Plaintiff Mark Kozy was a pilot for Wings West until he was fired for sexually harassing other employees. He filed a grievance pursuant to a collective bargaining agreement (CBA) between Wings West and his Union.[1] After losing at the initial stage, and waiting over a year for a written decision from the internal appeals board, Kozy filed suit against Wings West for breach of the CBA, and against the Union for breach of the duty of fair representation. The district court granted summary judgment against Kozy, and he filed this appeal. We affirm in part and reverse in part the decision of the district court, and remand this case for the limited purpose of compelling the representatives of the Union and Wings West, who comprise the appeals board, to issue an order resolving Kozy's grievance.

### Background

In response to his termination for sexual harassment, Kozy filed a grievance alleging that he had been wrongfully discharged. The CBA between the Union and Wings West provided that the first step of the grievance procedure was a hearing before the Wings West Vice President of Operations, Eugene Hahn. Kozy's grievance was denied by Hahn on May 21, 1992.

Kozy appealed to the second and final stage of the grievance procedure under the CBA: the System Board of Adjustment (Board). The parties stipulated that the Board was organized pursuant to § 204 of the Railway Labor Act (RLA), 45 U.S.C. § 184. The Board was comprised of one member selected by the Union, and one member selected by Wings West. At the Board's hearing on Kozy's grievance on November 12, 1992, the Board members were Gene Erreca, selected by the Union, and a Wings West official who is not named in the record. Kozy was represented by the Un-

ion's President, Jim Bishop, while Wings West was represented by Eugene Hahn.

There is no transcript or summary of the proceedings at that November 12, 1992 hearing. The parties did stipulate, however, that "various persons appeared and various written statements of other persons were received by the hearing officers and filed as evidence therein."

Jim Bishop states in his Declaration that "shortly" after the November 12, 1992, hearing, Gene Erreca called him and told him that the Board had voted to deny Kozy's grievance. Bishop relates that "[a]s far as I can remember, on the very same day, I called Mr. Kozy and told him that the [Board] had voted to deny his grievance."

But Kozy denies receiving a call from Bishop. In his declaration, Kozy states that "I was never told by anyone in my Union that my grievance was decided against me." Kozy states that he wrote a letter to Eugene Hahn, the Wings West official who represented the company at the hearing, to find out what the Board had done. Hahn responded to Kozy by letter dated February 3, 1993 which states in full as follows: "I am in receipt of your letter dated January 26, 1993. While my office did not conduct the proceedings, the Wings West Pilots' System Board of Adjustment did uphold your termination. Any questions you may have should be directed to [the Union]."

The parties stipulated below that "[Kozy] received and read the [Hahn letter] in February, 1993." Kozy followed Hahn's suggestion and contacted the Union. Kozy states that "I was told that I would receive a written decision on whether I was to return to work or be terminated." Kozy then relates that he "called the Union throughout 1993 to find out when I could expect a written decision. I was always told that the decision was coming. To this day, I have never received a written decision concerning my grievance." The parties stipulated that "the [CBA] provides that the [Board] must render its deci-

---

\* The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

1. We use the term "Union" to refer to the Regional Airline Pilot Association.

sion in writing." It is undisputed that the Board· has never issued a written decision.

■ About a year after receiving Hahn's letter, Kozy filed his complaint in California state court, asserting a "hybrid" claim against the Union and Wings West.[2] His claim against the Union charged a breach of the duty of fair representation caused by the Union's failure to represent him properly at the grievance hearing, and by the failure of the Union representative on the Board to see that a written decision was issued. His claim against Wings West charged a breach of the CBA caused by Wings West's conduct at the grievance, and by the failure of the Wings West representative on the Board to see that a written decision was issued. In addition, Kozy pled causes of action under state law for intentional infliction of emotional distress and defamation.

Wings West removed the action to federal district court. The district court granted two separate summary judgments, one for Wings West and the other for the Union defendants. The Union's summary judgment was based on the statute of limitations. The district court found that the applicable limitations period was 6 months, and that Kozy was aware of the Board's denial of his grievance by at least February 3, 1993, when he received Hahn's letter. Because Kozy waited until February 16, 1994, to file suit, the district court found that his claim for breach of the duty of fair representation was time-barred.

In a separate decision resolving claims against Wings West, the district court found that Kozy's claims were all subject to mandatory arbitration. The district court reasoned that the RLA requires the employee to use the CBA grievance procedures to resolve disputes arising under the CBA. Kozy's claims that Wings West procured false testimony, and prevented Kozy from introducing evidence, related directly to the grievance procedures set out in the CBA, and hence Kozy had to take these claims through the CBA's grievance process. Kozy appealed the summary judgments.

**2.** A "hybrid" claim "involves allegations both that the employer breached the collective bargaining agreement, and that the union breached

### Standard of Review

■ A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* Our review is not limited to a consideration of the grounds upon which the district court decided the issues; we can affirm the district court on any grounds supported by the record. *Weiser v. United States,* 959 F.2d 146, 147 (9th Cir.1992).

### Analysis

We begin our analysis by examining whether we have jurisdiction to hear this appeal in the absence of a written decision from the Board. The CBA provides that the Board was established "[i]n compliance with Section 204, Title II, of the [RLA]." Section 204, which is found at 45 U.S.C. § 184, "requires that an air carrier and its employees establish a system board of adjustment with jurisdiction over disputes 'growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Long v. Flying Tiger Line, Inc.,* 994 F.2d 692, 693 (9th Cir.1993) (quoting § 204). Congress "intended the statutory command [of § 204] to be legally enforceable in the courts and the boards to be organized and operated consistent with the purposes of the [RLA]." *International Ass'n of Machinists, AFL–CIO v. Central Airlines,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

■ While *Central Airlines* made it clear that the federal courts would ensure that the boards were organized and that their orders were enforced, it is equally clear that the RLA evinces a strong policy against judicial intervention in the actual resolution of griev-

its duty of fair representation...." *Allen v. United Food & Commercial Workers Int'l,* 43 F.3d 424, 426 n. 1 (9th Cir.1994).

ances. *Croston v. Burlington N. R. Co.,* 999 F.2d 381, 386 (9th Cir.1993). The § 204-mandated boards "are the mandatory, exclusive, and comprehensive system for resolving grievance disputes." *Flying Tiger,* 994 F.2d at 693–94. The RLA "provides federal court jurisdiction only to review *the final award* of the Adjustment Board and then on very limited grounds." *Croston,* 999 F.2d at 386 (emphasis added).[3] "We are reluctant to assert more general subject matter jurisdiction when it 'would eviscerate the [RLA's] system of arbitrating disputes.'" *Id.* (quoting *Flying Tiger,* 994 F.2d at 694).

Kozy's complaint asserts in part that the Union and Wings West committed errors during the grievance hearing, and conspired to deprive Kozy of his rights to a fair hearing. These claims request a federal court review of the grievance hearing. Yet the Board has never issued a written decision despite the CBA's requirement that a written decision be issued.

■ The RLA generally proscribes federal court intervention, and *Croston* specifically holds that federal courts have no jurisdiction until a final award is made by the board. Given this confined nature of federal court jurisdiction over RLA matters, we hold that the district court has no subject matter jurisdiction to hear Kozy's complaints about the errors committed before the § 204-mandated Board until a written decision is issued by the Board as required by the CBA.

But this ruling does not dispose of Kozy's entire complaint. The complaint—if read broadly—could be interpreted to allege that the Union and Wings West breached the § 204 agreement when their representatives on the Board failed to issue a written decision. Although the complaint's prayer for

relief does not specifically request an order compelling adherence to that § 204 agreement, the body of the complaint could fairly be read to make such a demand.

■ The district court had subject matter jurisdiction over Kozy's claim seeking adherence to the § 204 agreement requiring that a written decision be issued. *Central Airlines,* 372 U.S. at 692, 83 S.Ct. at 962 ("[T]he § 204 contract ... is a federal contract and is therefore governed and enforceable by federal law, in the federal courts."). The RLA, however, generally requires exhaustion of internal grievance procedures for all "minor disputes," which are defined as "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994).[4] But here there is no dispute or controversy over the meaning of the CBA: the parties have stipulated that the CBA requires a written decision, and it is undisputed that the Board has never issued one. Because there is no dispute of any kind over the Board's obligation to issue a written decision, Kozy is not required to exhaust his claim for a written decision under the grievance procedures.

We will therefore remand this case to the district court for the limited purpose of issuing an order compelling the Union and Wings West to direct their representatives on the Board to issue a written decision resolving Kozy's grievance. We affirm the district court's summary judgment dismissing the remaining hybrid claims on the ground that the district court had no subject matter jurisdiction to hear those claims prior to the issuance of a written decision by the Board.[5]

---

**3.** *Croston* arose under § 3 of the RLA, 45 U.S.C. § 153 First (q), while the present case arose under § 204. Although § 3 is applicable by its terms only to decisions of the National Railroad Adjustment Board, we have held that the same standard of review is applicable to § 204-mandated boards in the airline industry. *Edelman v. Western Airlines, Inc.,* 892 F.2d 839, 842 (9th Cir.1989).

**4.** Another class of disputes under the RLA—deemed "major disputes"—relate to the formation of collective bargaining agreements or efforts to secure them. *Hawaiian Airlines,* ——

U.S. at ——, 114 S.Ct. at 2244. The dispute at issue here clearly has nothing to do with the formation of a CBA.

**5.** We affirm the dismissal of the two state law claims on the basis of 28 U.S.C. § 1367(c)(3). The federal claims giving the District Court jurisdiction over these state law claims have been dismissed. While it is true that a single federal claim remains for enforcement of the CBA requirement that a written decision be issued, there is no allegation in the complaint that the failure to issue a written decision was defamatory or caused emotional distress.

There remains, however, a statute of limitations issue. The district court held that Kozy's claims were barred by the statute of limitations, and Kozy appealed that decision. If the district court is correct, a remand would be useless since Kozy's claims are time-barred. To avoid a meaningless remand, we will resolve the limitations issue.

The district court correctly recognized that a six-month limitations period applies to Kozy's action. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986). The six-month period begins to run when the employee "knows or should know of the alleged breach of duty of fair representation by a union." *Id.* at 1509. There was, at one time, some indication in this Circuit that the employee "should know" of his Union's errors in representing him at a hearing when he saw the errors committed during the hearing, and that the six-month period began to run from that date even if the grievance board had not yet rendered its final decision. *Id.* But *Galindo* resolved that confusion by holding that "where a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award." *Id.* This ruling recognizes that the arbitrator's final decision could make the employee whole despite the union's errors, and that the arbitrator could change his mind at any time prior to issuing a final and binding decision.

The "award" referred to in *Galindo* is conspicuously absent in this case. There is no written decision despite the CBA's requirement that one be issued. Federal courts have jurisdiction only to review "final awards" of the Board. *Croston*, 999 F.2d at 386. The Union would have us adopt a rule that the six-month period starts running even before Kozy could maintain a suit in federal court. The Union's position is directly contrary to the law in this Circuit governing the accrual of hybrid actions: "a cause of action [in a hybrid case] accrues when the plaintiff knew, or should have known, of the defendant's wrongdoing *and can successfully maintain a suit in the district court.*" *Allen v. United Food & Commercial Workers Int'l.*, 43 F.3d 424, 427 (9th Cir.1994) (emphasis added).

Here, Kozy could not successfully maintain a suit in the district court until he obtained a written decision. Because a written decision has never issued, the six-month period has not yet started to run. Pursuant to *Croston, Galindo,* and *Allen,* we hold that Kozy's hybrid cause of action does not accrue for purposes of the six-month limitations period until he knows of, or should know of, the written decision of the Board.

### *Conclusion*

We therefore reverse the decision of the district court that the limitations period started running as of February, 1993, when Kozy read the Hahn letter. We hold that the six-month limitations period will not begin to run until Kozy knows of, or should know of, the written decision of the Board.

We remand this case to the district court for the limited purpose of issuing an order compelling the Union and Wings West to direct their representatives on the Board to issue a written decision resolving Kozy's grievance in compliance with the CBA. We affirm the district court's dismissal of the hybrid claims—other than the claim for a written decision from the Board—on the ground that district court had no subject matter jurisdiction to hear those claims since no written decision had been issued. We further affirm the dismissal of the state law claims pursuant to 28 U.S.C. § 1367(c)(3). Once the Union and Wings West have complied with the order of the district court to issue a written decision, the district court is free to dismiss this action in its entirety.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party to bear its own costs.